## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Joshua J. Zollweg,<br><br>Debtor. | Case No. 16-05924-dd<br>Chapter 7 |
| In re:<br><br>Moss Construction of the Lowcountry, LLC,<br><br>Debtor. | Case No. 17-04252-dd<br>Chapter 7 |

### OBJECTION BY BUCK LUMBER AND BUILDING SUPPLY, INC. TO MOTION TO SUBSTANTIVELY CONSOLIDATE

The appointed Trustee in the above referenced Chapter 7 cases has moved to substantively consolidate the cases ("Motion"). Buck Lumber and Building Supply, Inc. ("Buck") is a named creditor in each of these cases, and hereby objects to the Motion on the grounds set forth herein and also incorporates by reference all of the defenses delineated in its Answer and its Objection to the Trustee's Motion for Default Judgment filed in Adversary Proceeding # 17-80036-dd within case # 16-05924-dd.

The Trustee alleges that Joshua J. Zollweg ("Zollweg") filed personal bankruptcy under Chapter 7 in November, 2016, with the said Trustee appointed on the date stated in the Motion.

The Trustee alleges that Zollweg was the sole owner and manager of a company named Moss Construction of the Lowcountry, LLC ("Moss"), which has as its sole asset a house in Bluffton, SC (the "Property").

The Trustee states that she filed an Adversary Proceeding (see above) alleging, et al., that Moss is the alter ego of Zollweg; that Moss did not respond to the Complaint and is in default; and that another defendant responded to the Motion for Default Judgment as to the alter ego cause of action; and that a hearing is scheduled for September 26, 2107.

The Trustee then proceeds to describe the status of the Property which was not insured and was behind in payment of real property taxes.

The remainder of the fact sections of the Motion describe what the Trustee believes are the responses to a variety of questions put forth in the deposition of Zollweg and the Buck representative in the Adversary Proceeding. The Trustee places great weight upon these statements as the grounds for consolidation of the cases. Buck disagrees with the conclusions reached by the Trustee in those depositions, and objects to the relief sought in the Motion.

### GENERAL DISCUSSION:

Buck asserts that Zollweg may have conceded certain statements but the Motion takes the responses out of context and does not include the full scope of the questions and responses. In particular, responding to the fifteen Zollweg statements by number and repeating the statements:

1. He agreed that he checked the box on the filing with the Secretary of State for Moss, in which he indicated that he was personally liable for all of the debts of Moss.

Response: This is correct. However, under South Carolina law, that checked box alone does not validate personal liability for the debts of Moss by Zollweg; a further writing is required. Zollweg testified that he did not have such a writing.

2. He indicated that he had listed all of the creditors of Moss in his personal bankruptcy.

Response: Zollweg made such a statement, without the benefit of fully reviewing his bankruptcy schedules at the deposition. Buck lacks sufficient information to prove this statement true or false, as does the Trustee; but on information and belief at least the Palmetto Bluff Property Owers Association, Inc. homeowners association, a direct creditor of Moss but not of Zollweg individually, is not on his personal schedules.

3. Tracking the allegations in the Complaint (17-80036-dd), Zollweg admitted that he had been in complete control of Moss at all times since its creation.

Response: Zollweg admitted this fact, but the Trustee does not explain why it is relevant to consolidation. Control of Moss by its member/manager is normal and part of the day-to-day activities of such a business.

4. He did not capitalize Moss at all when it was created.

Response: Zollweg admitted as much, but when Moss was formed, it was a totally different company named Zollweg Properties, LLC (year 2007) and did not become Moss until later (year 2009). No details are provided in the Motion as to its relevance.

5. He agreed that Moss's liabilities substantially exceeded its assets at all times from September 2012 to the Petition Date.

Response: Zollweg did make such general statement (not necessarily at "all" times, arguably) but it was based upon records that were at best incomplete and that did not capture the full value of the Property as an asset.

6. He agreed that Moss did not hold member meetings or act through resolutions or other recorded methods.

Response: Zollweg did affirm this statement, but this statement does not take into account the lack of need for such meetings, etc. under South Carolina law.

7. He agreed that Moss has not maintained company records and has never had an operating agreement since its creation in 2007.

Response: Zollweg did in fact maintain certain company records, on information and belief. However, even if Zollweg affirmed this statement, again its relevance is questioned as no such records or operating agreement are needed for an LLC in South Carolina.

8. He agreed that he withdrew funds from Moss or caused Moss to pay the Debtor's obligations whenever he chose to do so and put funds into Moss whenever he chose to do so.

Response:  Zollweg stated that he did take such actions. However, the Trustee does not consider the idea that if Zollweg had simply taken distributions from the LLC payable to himself and then used the money to pay personal expenses, this would not have been a questionable methodology.  Again, the relevance of this statement to the Motion is nill.

9. He agreed that he siphoned funds from Moss at his discretion, including $25,500 that he removed shortly before he filed bankruptcy and did not disclose on his bankruptcy schedules.

Response:  This statement does not describe the full extent of these actions, nor does it reveal the purposes of the actions nor that a substantial portion of such funds were delivered to the Trustee.

10. He agreed that neither he nor Moss maintained a separate accounting of the funds from the Debtor to Moss or the funds from Moss to the Debtor.

Response:  Even if Zollweg made such statement, it begs the point that there actually is an accounting of such funds at least in the form of checking and bank account ledgers and statements which the Trustee has.

11. He agreed that he is currently subject to criminal charges in Charleston County related to the operations of Moss.

Response:  The public records for Charleston County does reveal these filings, but there is no record of a plea or conviction to any of them.  There is no relevance to the Motion.

12. Zollweg agreed that the Property was placed in the name of Moss when it was purchased but that he personally provided the funds used to purchase the Property.

Response:  Even if true, the Trustee does not and cannot relate this conclusion to the Motion.

13. He agreed that the funds used to build the house on the Property came from him personally.

Response:  Even if true, the Trustee does not and cannot relate this conclusion to the Motion.

14. He agreed that he used the Property as a summer home, a weekend getaway and a family vacation home.

Response:  Even if true, the Trustee does not and cannot relate this conclusion to the Motion. Further, the Trustee omits Zollweg's statements that Moss clients also used the Property which affirms its use for business purposes.

15. For much of the time that Moss existed, its office was located at Zollweg's residence.

Response:  Even if true, the Trustee does not and cannot relate this conclusion to the Motion.

Additionally, as to the Buck credit application allegations, the Trustee has misread the Buck application forms and concludes that by signing his name without a title next to it, Zollweg

3

somehow created a totally new and different credit application but which was in fact set up in the name of Moss.  This conclusion defies the plain language on the face of the application documents, and in fact the Trustee does not and cannot relate this conclusion to the Motion.

As to the Buck mortgages, it was clearly stated that the same were provided to support the ongoing credit purchases by Moss and to protect the Buck account going forward. This conclusion is omitted from the Motion.

Finally, the Trustee apparently desires to use the funds Zollweg provided her as described above to cover the insurance and property taxes for the Property. The Trustee does not explain the impact of the Moss automatic stay on the delinquent tax collections, nor whether or not available funds would be sufficient to cover insurance premiums and deductibles on the Property.

## APPLICABLE LAW:

Restating and summarizing the law involving substantive consolidation of bankruptcy cases in this Court per the Motion (citations omitted):

Substantive consolidation is an equitable remedy, and the Court has broad discretion under 11 U.S.C. §105 to determine whether substantive consolidation is appropriate. This Court has previously adopted the test which provides that substantive consolidation is appropriate (1) if creditors dealt with the entities as a single economic unit and did not rely on separate identities in extending credit or (2) when the affairs of the debtor are so entangled that consolidation will benefit all creditors.

## ARGUMENTS:

There is no proof in this matter, nor in the Motion, that creditors, specifically or generally, considered Zollweg and Moss as one and the same.  From the schedules filed in the Zollweg case, there is every indication that Moss was a separate entity, and to date no party in interest in the Zollweg case, except for the Trustee, has alleged otherwise.  The schedules also identify a variety of creditors for which only Zollweg is responsible, not Moss, and which indicates a clear separation of debt identities (also confirmed by Schedule H). From Buck's viewpoint, the two entities (Zollweg personally, and Moss as an LLC) were separate and distinct from one another, which is one reason why Buck required a personal guarantee from Zollweg to cover the Moss ongoing account.  The first test for substantive consolidation fails on its face.

Again, the allegations in the Motion are incomplete and off-center so as to create the appearance of fund overreaching (entanglement) by Zollweg.  However, as stated above, personal draws in any form from an LLC to a member are the norm and are not extraordinary actions. Further, consolidation does not benefit ALL creditors, as, for example, the Palmetto Bluff Property Owners Association, Inc. homeowners association, if the Property is comingled with Zollweg's case, because the potential for diluted and diminished distributions increases substantially.  Lastly, the creditors in Moss would also bear the burden of the Trustee's attorneys fees and costs already expended in the Adversary Proceeding in the Zollweg case, further diluting potential payouts to Moss creditors. There is no benefit to "all" creditors by consolidating the cases.

In addition, consolidating the cases at this stage of the Zollweg case begs the issue of whether or not any potential causes of action which the Trustee may have under Moss alone are enhanced IF the consolidation causes the filing to be considered retroactive to the filing of the Zollweg personal case.  Further, while under general bankruptcy law there is no discharge of debt for an LLC in Chapter 7 cases, consolidating Moss with Zollweg's case may upset that law and allow singular creditor claims against Moss alone to be discharged.

As to the Adversary Proceeding itself, consolidation opens new problems for administering the cases, already set in place by the filing date of the Moss bankruptcy case, including but not limited to the following:

The trial set for September 26 in the Adversary Proceeding apparently is now stayed by the filing of the Moss case due to the automatic stay. The result is increased delays in all cases and proceedings.

The Trustee now is the plaintiff AND the defendant in the Adversary Proceeding, thereby creating a conflict of interest. Furthermore, Moss is now represented by counsel who may have a duty to open the default in the Adversary Proceeding, and/or it now has the ability to respond to the alter ego theories. It should be expected that neither action will occur if the representation of both debtors is the same.

In sum, the creditors of Moss have and should have the right to seek their own remedies against the Moss assets, as should the parties in interest in the Zollweg ase; and by including them within both cases leads to the potential for diluted distributions from both of the estates due to the increased overall numbers of potential claims and limited assets. The Motion should be denied, and this Court should so order and grant such other and further relief as it deems just and appropriate.

| September 8, 2017 | /s/ Steven L. Smith |
|---|---|
| | **Steven L. Smith** |
| | **D.Ct. # 4204** |
| | **SMITH | CLOSSER. P.A.** |
| | **P.O. Box 40578** |
| | **Charleston, SC 29423** |
| | **Attorney for Buck Lumber and Building Supply, Inc.** |
| | **(843) 760-0220** |
| | **Email: ssmith@scnlaw.com** |

| September 8, 2017 | /s/ Ivan N Nossokoff |
|---|---|
| | **Ivan N. Nossokoff** |
| | **D.Ct. # 2556** |
| | **IVAN N. NOSSOKOFF, LLC** |
| | **Attorney for Buck Lumber and Building Supply, Inc.** |
| | **4000 Faber Place Drive, Suite 300** |
| | **Charleston, SC 29405** |
| | **(843) 571-5442** |
| | **Email: inn@nosslaw.com** |

5

**CERTIFICATE OF SERVICE**

I certify that on September _____, 2017, I served a copy of the following documents upon the parties listed below, by CM/ECF, and/or by mailing a copy of the same by the United States Postal Service, in an envelope with the correct postage prepaid, and/or by fax, and/or by hand delivery, and/or by FedEx:

| *DOCUMENT:* | *PARTIES SERVED:* |
|---|---|
| **OBJECTION** | Barbara George Barton, Esq.<br>Barton Brimm PA<br>Attorneys for Trustee Michelle L. Vieira, Plaintiff<br>3955 Hwy. 17 Bypass, Ste. D<br>Murrells Inlet SC 29576<br>bbarton@bartonlawsc.com |

/s/Ivan N. Nossokoff
**Ivan N. Nossokoff (I.D. No. 2556)**
**IVAN N. NOSSOKOFF, LLC**
**Attorney at Law**
**4000 Faber Place Drive, Suite 300**
**North Charleston, SC 29405**
**Phone: 843-571-5442**
**Email: inn@nosslaw.com**
**Attorney for the Defendant, Buck Lumber And Building Supply, Inc.**

6